UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY R. WITKIN, | Case No. 19-cv-00064-SI |
| Plaintiff, | |
| v. | **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| ANDREW SAUL[1], | Re: Dkt. Nos. 12, 15 |
| Defendant. | |

The parties have filed cross-motions for summary judgment in this Social Security appeal. Dkt. Nos. 12, 15. Having considered the parties' papers and the administrative record, the Court hereby GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment. For the reasons stated below, the Court REVERSES the denial of benefits and REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

## BACKGROUND

### I. Administrative Proceedings

On February 13, 2015, plaintiff filed applications for Disability Insurance benefits ("DIB") and Disabled Adult Child ("DAC") benefits pursuant to Title II and Part A of Title XVIII of the Social Security Act, alleging a disability onset date of November 24, 1986. Administrative Record ("AR") at 498-508. The claims were denied initially on June 9, 2015, and upon reconsideration on August 25, 2015. *Id.* at 419-432. Thereafter, plaintiff filed a timely written request for hearing on September 25, 2015. *Id.* at 433. Plaintiff appeared and testified at a hearing held on February 3, 2017 in Oakland, California. *Id.* at 333-360. Because plaintiff indicated at the February 3, 2017

---

[1] Andrew Saul, Commissioner of Social Security, is substituted for his predecessor, Nancy A. Berryhill, pursuant to Federal Rule of Civil Procedure 25(d).

hearing that there were outstanding medical records in her file, the ALJ left the record open to allow for submission of these records. *Id.* at 356-360. Once the additional records were submitted, a supplemental hearing was held on September 8, 2017 in Oakland, California. AR at 362-388. Plaintiff appeared and testified, as did medical expert Kent B. Layton, Psy.D., and vocational expert Susan Green. *Id.* The ALJ issued an unfavorable decision on November 9, 2017. AR at 20-22. The Appeals Counsel denied plaintiff's request for review of that decision on November 5, 2018. AR at 1-6. The ALJ's decision became the final decision of the Commissioner when the Appeals Counsel denied review.

Plaintiff then filed an action for judicial review pursuant to 42 U.S.C. § 405(g). Dkt. No. 1. The parties cross-moved for summary judgment. Dkt. Nos. 12, 15.

## II.    Medical and Personal History

At the time of the first administrative hearing, plaintiff Emily Rose Witkin was a thirty-year-old college graduate with a long history of depression, attention deficit disorder hyperactivity disorder ("ADHD"), autism spectrum disorder, bipolar disorder, anxiety disorder, personality disorder, and alcohol use. AR at 338, 610-612. Born in Pittsburgh, Pennsylvania on November 23, 1986, Ms. Witkin moved to Oakland, California with her family when she was 11 years old. AR at 611. Ms. Witkin earned a bachelor's degree in psychology from Reed College in 2010. *Id.* Her parents were married until Ms. Witkin's father passed away in a scuba diving accident in September 2010. *Id.* Ms. Witkin's mother, Sharon Witkin, a psychologist, testified at the first administrative hearing. *Id.* at 333-360.

Teachers first expressed concern for Ms. Witkin in preschool because she did not interact with other children. AR at 691. Over the course of her education, Ms. Witkin had several educational evaluations and was identified as having ADHD and dyslexia. *Id.* In January 1995, when Ms. Witkin was 8 years old, she was evaluated due to concern with her academic progress and social and emotional development. AR at 620. While the results of the evaluation showed Ms. Witkin's verbal and perceptual reasoning abilities to be in the Very Superior and Superior range, Ms. Witkin demonstrated difficulties with attention and processing speed, a reading learning

disorder, anxiety, low self-esteem, and a reluctance to accept physical attention.  *Id.*  A 2006 assessment yielded similar high ranges in verbal and perceptual reasoning, although hampered by her weakness in processing speed.  *Id.*  In July and October of 2009, a neuropsychological evaluation yielded diagnoses of ADHD, reading disorder, disorder of written expression, major depressive disorder, and anxiety disorder.  *Id.*  Throughout her schooling, Ms. Witkin received accommodations for her dyslexia.  AR at 691.

Following a stay at a mental health facility in Utah, Ms. Witkin was found to be on the autistic spectrum.  AR at 623-624, 639.

Ms. Witkin began seeing a therapist in college.  AR at 691.  While in college, Ms. Witkin had feelings of self-harm, overdosed on medication, and called 911.  *Id.*  Between December 2013 and August 2014, Ms. Witkin was hospitalized no fewer than seven times in order to receive psychiatric care.  AR at 610.  For several years, Ms. Witkin has been cutting herself.  *Id.*  Throughout her adult life, Ms. Witkin has been on various medications for her depression, anxiety, and ADHD.  *Id.*

Ms. Witkin began drinking at 21 years old and has, at times, been a daily drinker.  *Id.*  She was charged with a DUI in her twenties.  AR at 610-611.  Many of Ms. Witkin's hospitalizations relate to her alcohol use.  AR at 1033-54 (12/22/2013 Alameda County Medical triage notes indicating intoxication); AR at 1006-1030 (12/30/2013 Alameda County triage notes); AR at 702-710 and 982-1005 (4/14/2014 Alta Bates emergency room visit); AR at 711-730 and 1100-1104 (5/25/2014 Alta Bates emergency room visit); AR at 755-763 and 1112-1130 (6/29/2014 Alta Bates emergency room visit); AR at 784-793 and 1131-1140 (7/7/2014 Alta Bates emergency room visit); AR at 817-827 and 1147-1157 (10/2/2014 Alta Bates emergency room visit); AR at 842-851 (10/5/2014 Alta Bates emergency room visit); AR at 876-880 (2/24/2015 Contra Costa Regional Medical Center visit); AR at 881-887 (08/14/2015 Contra Costa Regional Medical Center visit); AR at 888-905 (08/16/2015-08/17/2015 Contra Costa Regional Medical Center visit); AR at 906-913 (08/20/2015 Contra Costa Regional Medical Center visit); AR at 914-921 (10/05/2015 Contra Costa Regional Medical Center visit); AR at 922-928 (10/07/2015 Contra Costa Regional Medical Center visit); AR at 929-937 (10/31/2015 Contra Costa Regional Medical Center visit); AR at 938-951

3

(05/10/2016 Contra Costa Regional Medical Center visit); and AR at 952-965 (03/25/2017 Contra

Costa Regional Medical Center visit).

### III. Medical Evidence

Plaintiff's medical records include numerous records from plaintiff's emergency room visits, and follow-up inpatient hospital stays. The records show plaintiff visited the emergency room nearly twenty times for emergency psychiatric care and suicide risk. AR at 694-965, 1055-1157. The record also includes treatment notes from plaintiff's office visits to Sutter Health East Bay Medical. AR at 634-689. In August 2014, plaintiff received care and a full evaluation from a treatment team at the University of Utah Health that included psychiatrist Laura Gilley, M.D., psychologist Amanda Stoeckel, Ph.D., and social worker Sallee Robinson, L.C.S.W. AR at 604-633. The record also includes an assessment by social worker Jolyn Aaker of the Regional Center of the East Bay performed in late September 2016. AR at 690-693.

In addition to reviewing treatment records, the ALJ also considered the opinion of a non-treating practitioner: Dr. Kent Layton, a non-examining clinical psychologist who testified at the second administrative hearing.

#### A. Treating Physicians

Plaintiff's medical records include provider notes and summaries from her many hospital visits. On December 22 and 30, 2013, plaintiff, while intoxicated, repeatedly called 911 and threatened to commit suicide. AR at 1006-1054. In 2014, plaintiff was admitted to Alta Bates hospital several times to receive emergency care, including on April 14, May 25, May 29, June 29, July 7, October 2, and October 5. AR at 702-851. Often plaintiff expressed suicidal thoughts or ideations of engaging in other types of self-harm (*e.g.* cutting) and was intoxicated. *Id.* In 2015, plaintiff visited the emergency room at Contra Costa Hospital no less than seven times, on February 24, August 14, August 16, August 20, October 5, October 7, and October 31. AR at 876-937. Usually she was placed on psychiatric hold. *Id.* On August 23, 2015, plaintiff visited the Alta Bates emergency room complaining of weakness and slurred speech, without alcohol consumption. AR

at 852-862. The issue resolved on its own and plaintiff was discharged from the hospital. *Id.* at 857. On May 10, 2016 and then again on March 25, 2017, plaintiff received emergency care in Contra Costa because she presented a suicide risk. AR at 938-951, 952-965.

In the fall of 2016, social worker Jolyn Aaker of the Regional Center of the East Bay assessed plaintiff's independent living skills, behavioral/emotional skills, and social skills. AR at 690-693. Jolyn Aaker found plaintiff to be "a sweet 29 year old woman who has been diagnosed with Major Depressive Disorder, recurrent, severe without psychosis, Generalized Anxiety Disorder, Social Phobia, Anxiety Disorder NOS, Autism Disorder, Severity Level 1, ADHD, Reading Disorder." *Id.* at 693. Ms. Aaker also noted that plaintiff "has struggled with mental health issues and has been hospitalized on several occasions and went to a residential treatment program for three weeks." *Id.* at 692. According to the assessment, plaintiff "struggles with big crowds," "gets frustrated with herself on a daily basis," and "has overdosed on medication, cut herself and burned herself." AR at 692-693.

### B.      Examining University of Utah Team

On August 24, 2014, Dr. Gilley assessed plaintiff upon her admission to the University Neuropsychiatric Institute ("UNI") Comprehensive Assessment and Treatment Program for stabilization and medical adjustments. AR at 610. During the assessment, Dr. Gilley noted Ms. Witkin "appears somewhat younger than her age" and "has decreased eye contact." AR at 611. On the date of the assessment, Dr. Gilley found Ms. Witkin "is endorsing suicidal ideation" and "self-harm thoughts." *Id.* Dr. Gilley determined that depression and anxiety were likely diagnoses. *Id.* While in the UNI treatment program, Ms. Witkin consulted with Dr. Scott Stiefel, who diagnosed her with depression, anxiety, and autism spectrum disorder. AR at 627. Upon plaintiff's discharge, the UNI treatment team recommended an ongoing treatment plan, including therapy two to three times a week. *Id.*

### C.      Reviewing Physicians

In June 2015, medical consultants Dr. George Spellman, Jr. and Dr. Yanira Olaya rendered

opinions[2] as part of the SSA's initial review of plaintiff's disability application. Drs. Spellman and Olaya reviewed medical records from plaintiff's office visits to Sutter Health East Bay Medical. AR at 390-391, 397-398. Both determined there was insufficient evidence in the record to make a determination in the case during the relevant time periods. AR at 392, 399. Both found no evidence of any substance abuse disorder or DAA issue. *Id.* at 394, 401. On August 20, 2015, Dr. F. Wilson, M.D. and Dr. Julie Bruno, Psy.D. found the same. *Id.* at 409, 415.

Because these doctors did not review the medical evidence available at the hearing level, the ALJ assigned little weight to their assessments. AR at 30.

### D. Non-examining Psychologist

Dr. Kent Layton, a non-examining psychologist reviewed plaintiff's records and testified as the medical expert at plaintiff's second administrative hearing on September 8, 2017. *Id.* at 365-376. Dr. Layton testified that plaintiff has bipolar disorder, anxiety disorder, and is narcissistic, antisocial, and histrionic (listings 12.04, 12.06, and 12.08). *Id.* at 367. In addition, Dr. Layton found evidence of ADHD (listing 12.11) and a diagnosis of Asperger's, which is an autistic spectrum diagnosis. *Id.* Dr. Layton also testified that plaintiff "has many alcohol intoxications." *Id.* Based on her numerous intoxications, Dr. Layton opined that plaintiff neither singularly nor in combination met or equaled any of the listings of severe impairments. AR at 370-371. However, Dr. Layton concluded that, when plaintiff was on drugs, intoxicated, or going through withdrawals, her conditions met or equaled the listings of severe impairments. *Id.* at 370-373.

The ALJ assigned great weight to Dr. Layton's opinions. *Id.* at 28.

### E. Additional Evidence

Plaintiff submitted additional evidence to the Appeals Council consisting of a Psychological and Education Evaluation by Patricia R. McClinchie, M.S., C.A.G.S., dated January 26, 1995 to January 30, 1995; an Addendum to Psychological Evaluation by Robin S. Barack, Ph.D., dated June

---

[2] Dr. Spellman and Dr. Olaya rendered two opinions each: one relating to plaintiff's DIB claim and another relating to her DAC claim.

29, 1998; an Update to Educational /Psychological Evaluation by Karen Hagerman Muller, Ph.D., dated August 18, 2002; a Confidential Psychological Assessment by Laura Milner, B.S., Sara Winegar, Psy.D., and Barre Stoll, Psy.D., dated October 24, 2006; a Neuropsychological Assessment by Teresa A. Doyle, Ph.D., and Jennifer L. Rosenthal, Ph.D., dated July 6, 2009 to July 10, 2009; and an Affidavit of Sharon Witkin dated May 17, 2018. AR at 2. The Appeals Council found this evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision. *Id.*

Plaintiff also submitted medical records from Lifelong Medical Clinic dated January 31, 2013 to May 22, 2018; medical records from Lifelong Medical Clinic dated February 21, 2014 to July 20, 2017; medical records from Alta Bates Summit Medical Center Psychiatric Unit dated June 29, 2014 to June 30, 2014; medical records from New Directions dated January 2, 2015 to May 6, 2016; an Individual Program Plan – Adult from Regional Center of the East Bay Contra Costa County, dated January 31, 2017, a letter from Michelle Baker, MFT dated February 9, 2017; a letter from Caroline M. Date, Psy.D., dated February 28, 2017; a letter from Caroline M. Date, Psy.D., dated September 25, 2018; a letter from Michelle Baker, MFT dated September 10, 2018; a letter from James A. Cowgill, LMFT dated September 18, 2018; and a medical source statement from Linda Frankel, M.D., dated September 21, 2018. AR at 2. Finding that this evidence did not relate to the time period at issue, the Appeals Council found it did not affect the decision as to whether plaintiff was disabled beginning on or before September 30, 2009. *Id.* The Appeals Council included all of plaintiff's additional submitted evidence in the record. AR at 65-330.[3]

**LEGAL STANDARD**

**I.      Standard of Review**

The Social Security Act authorizes judicial review of final decisions made by the

---

[3] The Court notes that the ALJ did not have the benefit of these records before him during the administrative hearing. Nevertheless, this Court must consider those records "when reviewing the Commissioner's final decision for substantial evidence." *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). As such, the Court has incorporated its review of the newly submitted evidence where appropriate into its analysis.

Commissioner. 42 U.S.C. § 405(g). Here, the decision of the ALJ stands as the final decision of the Commissioner because the Appeals Council declined review. 20 C.F.R. § 416.1481. The Court may enter a judgment affirming, modifying or reversing the decision of the Commissioner, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g).

Factual findings of the Commissioner are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001). The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* at 1098. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation marks and citations omitted). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098 (citation omitted). "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

## II. Disability Benefits

A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months[,]" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 1382c(a)(3)(A)-(B). The SSA regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The claimant has the burden of proof for steps one through four and the

Commissioner has the burden of proof for step five. *Tackett*, 180 F.3d at 1098.

The five steps of the inquiry are:

> 1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
>
> 5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. *Tackett*, 180 F.3d at 1098 n.3.

In between the third and fourth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), (e), 416.945(a)(5)(i). To determine the RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to meet the physical, mental, sensory, and other requirements of work. *Id.* §§ 404.1545(a)(4), 416.945(e). The ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record. *Id.* The evidence can include the claimant's own statements about his or her symptoms, but such statements must be adequately supported by the record in order to establish a disability. *Id.* In order to determine whether the claimant's statements are adequately supported, the ALJ must first determine whether the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms, and then must evaluate the intensity and persistence of the claimant's symptoms. *Id.* When evaluating intensity and persistence, the ALJ must consider all the available evidence, including the claimant's medical history, objective medical

9

evidence, and statements about how the claimant's symptoms affect him or her. *Id.* The ALJ cannot reject statements about the intensity and persistence of symptoms solely because no objective medical evidence substantiates the statements. *Id.* §§ 404.1529(c)(2), 416.929(c)(2). The ALJ must also consider factors relevant to the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms. *Id.* § 416.929(c)(3)(i)-(vii). After determining the RFC, the ALJ proceeds to steps four and five of the disability inquiry.

## III.    Disabled Adult Child Benefits

The primary purpose of social security schemes aimed at children is to provide support for dependents. *See Doran v. Schweiker*, 681 F.2d 605, 607 (9th Cir. 1982) (citing *Jimenez v. Weinberger*, 417 U.S. 628, 633-634 (1974)). Under Title II of the Social Security Act, a disabled adult whose parent is entitled to Social Security retirement benefits may herself receive childhood disability benefits if, *inter alia*, she can demonstrate that at the time of filing for child's insurance benefits, she was unmarried, dependent on the wager-earner parent, and "is under a disability ... which began before [s]he attained the age of 22." 42 U.S.C. § 402(d); 20 C.F.R. § 404.350; Soc. Sec. Admin, Program Operation Manual System ("POMS DI") 10115.001.

For child disability benefits and social security disability insurance benefits generally, disability is defined as the "inability to engage in any substantive gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be severe enough to render her unable to do her previous work and unable to "engage in any other kind of substantial gainful work which exists in the national economy," given the claimant's age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

Additionally, to establish entitlement to DAC benefits, "the claimant must be disabled continuously and without interruption beginning before her twenty-second birthday until the time

she applied for child's disability insurance benefits." *Smolen v. Chater*, 80 F.3d 1273, 1280 (9th Cir. 1996) (emphasis in original). An intervening period of apparent non-disability may defeat a DAC claim. *See Vicari v. Astrue*, C 09-5238 SI, 2012 WL 761686, at *4 (N.D. Cal. Mar. 8, 2012) (citing POMS DI 10115.001).

## IV.     Drug Addiction and Alcoholism (DAA)

If, considering all of the claimant's medically determinable impairments, there is a determination that the claimant is disabled, and there is medical evidence showing drug addiction and alcoholism ("DAA"), then the ALJ must determine whether the DAA is "material" to the finding that the claimant is disabled. 20 C.F.R. § 404.1535. The Social Security Act provides that a claimant "shall not be considered disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the . . . determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In determining whether a claimant's DAA is material, the test is whether an individual would still be found disabled if he or she stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). The ALJ must "evaluate which of [the claimant's] current physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the claimant's remaining limitations are disabling, then the claimant's DAA is not a material contributing factor to the determination of disability, and the claimant is disabled, independent of his or her DAA. *See* 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). The claimant bears the burden of proving that his substance use is not a material contributing factor to his disability. *Parra*, 481 F.3d at 748.

## ALJ DECISION

On October 11, 2017, the ALJ issued a decision finding plaintiff was not disabled under the Social Security Act. AR at 37. In determining plaintiff's disability status, the ALJ first established

11

plaintiff's Date Last Insured (September 30, 2009) and the date prior to plaintiff's attaining age 22 (November 23, 2008) for her DIB and DAC claims respectively. *Id.* at 24. The ALJ then applied the five-step disability analysis set forth by 20 C.F.R. § 404.1520(a). *Id.* at 24-26. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity from November 24, 1986, the onset date alleged by plaintiff, through her Date Last Insured, or through the present. *Id.* at 26. At step two, the ALJ found plaintiff suffered severe impairment from alcohol abuse, major depressive disorder, attention deficit hyperactivity disorder, autism spectrum disorder (Asperger's), bipolar disorder not otherwise specified, anxiety disorder, and personality disorder (cluster B features). *Id.* at 26-27. At step three, the ALJ found that the severity of plaintiff's impairments, including alcohol abuse, met the "A" and "B" criteria of sections 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.08 (personality and impulse-control disorders). *Id.* at 27-28. The ALJ stated the "paragraph A" criteria satisfied because plaintiff "had a documented history of depressed moods, anhedonia, decreased energy, fatigue, decreased motivation, suicidal thinking, insomnia, restlessness, and anxiety[.]" AR at 28. With respect to the "paragraph B" criteria, the ALJ found, when considering plaintiff's alcohol abuse disorder, that plaintiff had marked limitations in two of the four areas of mental functioning: interacting with others and adapting or managing oneself. *Id.* at 29. In support, the ALJ stated:

> While under the influence of alcohol, the claimant expressed suicidal ideations and interacted inappropriately with others. For example, on April 14, 2014, while intoxicated, the claimant called "911" approximately 100 times after she superficially cut herself with a knife (Exhibit 4F/9). On another occasion, after the claimant drank a bottle of wine and was psychiatrically hospitalized due to self-harm behaviors, she spit on medical staff (Exhibit 4F/45). At other times, when hospitalized while intoxicated, the claimant is loud and yells at medical staff (Exhibit 5F/84).
>
> . . .
>
> As for adapting or managing oneself, the claimant had marked limitations. The claimant's medical record indicates that almost all of her psychiatric hospitalizations were related to her substance use (e.g. 4F/9 and Medical Expert Testimony). For example, on April 14, 2014, after the claimant drank vodka, she called "911" approximately 100 times and was eventually admitted to Alta Bates for a psychiatric evaluation (Exhibit 4F/9). While at the hospital, the claimant reported suicidal thoughts, but she also tested positive for high alcohol levels (Exhibit 4F/10, 15). She was discharged from care on the same day (Exhibit 4F/11). One month later, she drank a bottle of wine, cut herself with razor blades, and then called a suicide hotline causing police to arrive at her home and place her on a 5150 hold (Exhibit 4F/18).

> On May 25, 2014, the claimant informed an evaluating psychiatrist that she started cutting herself at age 17 and had trouble controlling her alcohol consumption (Exhibit 4F/28). The claimant acknowledged that drinking caused her to become disinhibited and at significant risk for self-harm behaviors (Exhibit 4F/28). Medical care providers have noted that when the claimant abuses alcohol, she becomes more suicidal and has issues maintaining her safety (Exhibit 4F/55).

AR at 29. Before proceeding to step four, the ALJ determined that plaintiff's alcohol abuse is "material to her impairments being of listing level severity." *Id.* The ALJ did not determine which impairments would remain if plaintiff stopped drinking alcohol but stated that plaintiff "has a long history of mental health impairments." AR at 31.

The ALJ found that, if plaintiff stopped the substance use, she would continue to have a severe impairment or combination of impairments, but they would not meet or equal any of the Listed Impairments. *Id.* at 30-31. In particular, the ALJ determined that plaintiff's remaining limitations would not meet or medically equal the criteria of listings 12.04, 12.06, 12.08, or 12.10 (autism spectrum disorder). *Id.* at 31. With respect to the "paragraph B" criteria, the ALJ found, if plaintiff's alcohol use stopped, that plaintiff had only moderate limitations in two of the four areas of mental functioning: interacting with others and adapting or managing oneself. *Id.* at 31-32. In support, the ALJ stated:

> In interacting with others, the claimant had moderate limitations if the substance use was stopped. The record reflects that since she started college, she tutored students and babysat children (Initial Hearing Testimony). I note that being able to tutor students and babysit children requires the ability to successfully teach students different subject matters and the ability to gain the trust of parents to hire the claimant to spend time with their children (*see also*, Medical Expert Hearing Testimony). During routine medical examinations, the claimant is described as a friendly, slightly withdrawn young woman who carries a small stuffed owl to appointments (Exhibit 2F/7). Once she becomes comfortable with an examiner, she becomes quite talkative, appropriate, and provides good eye contact (Exhibits 2F/7 and 3F/1). The claimant alleges that she struggles with big crowds, yet, she is able to regularly use BART to attend medical appointments (Initial Hearing Testimony). The claimant is also able to attend college and graduate school lectures, which requires the ability to be around large groups of people (Exhibits 3F/3, Initial Hearing Testimony, and Supplemental Hearing Testimony).

> . . .

> As for adapting or managing oneself, the claimant had moderate limitations if the substance use was stopped. While the claimant has reported that she needs help scheduling appointments and organizing her house, she is able to take care of several preschool-aged children and tutor children (Exhibits 2F/19; 3F/3; and Initial Hearing Testimony). Being able to care for very young children reflects that the claimant is able to care for her own personal care needs and the personal care needs of others (Exhibit 2F/19). During the relevant period, the claimant was able to relocate to

Oregon, live with roommates, and attend college courses (Exhibit 3F/2). The record reflects that the claimant takes small stuffed animals and toys with her to appointments, it appears that this gives her some comfort (Exhibit 2F/3). Treatments [sic] notes from December 22, 2013, indicate that the claimant's mood improved once she was sober from alcohol and took her medications (Exhibit 7F/75).

AR at 31-32.

Using the degree of limitation found in the "paragraph B" mental function analysis, the ALJ assessed plaintiff's residual functional capacity ("RFC"). AR at 32. The ALJ found that if plaintiff stopped the substance use, prior to attaining age 22 and as of the date of last insured, plaintiff would have the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: plaintiff could perform both simple and complex work, but should be routine in nature; plaintiff could occasionally interact with the public; and plaintiff could occasionally interact with co-workers, but not in a tandem, team, or group setting. *Id.* In making the RFC assessment, the ALJ evaluated plaintiff's testimony, her mother's testimony, objective medical evidence, opinion evidence, and other evidence. *Id.* at 32-33. The ALJ found the evidence only partially supported plaintiff's allegations when she is intoxicated, but when sober, the evidence did not support plaintiff's subjective allegations. *Id.* at 33. The ALJ noted that plaintiff's "refusal to follow all forms of recommended treatment undermines the allegedly debilitating effects of her conditions." *Id.* The ALJ stated "when the claimant is on her medications and abstaining from drinking, the record reflects that she is mentally stable[.]" AR at 33. The ALJ also determined "claimant's worsening of mental health symptoms are almost always related to her alcohol abuse." *Id.* In making the RFC determination, the ALJ assigned great weight to the testimony of non-examining psychologist Dr. Layton. *Id.* at 34.

Continuing to step four, the ALJ determined that plaintiff had no past relevant work. AR at 35. With respect to step five, the ALJ found plaintiff was a younger individual age 18-49 on the DLI, has at least a high school education and is able to communicate in English. *Id.* Based on testimony from the vocational expert ("VE"), the ALJ concluded that, if plaintiff stopped the substance use and considering her age, education, work experience, and RFC, she would be capable of performing a significant number of jobs existing in the national economy, including hand packager, industrial cleaner, and laundry worker II. AR at 35-36. Therefore, a finding of "not

14

disabled" was appropriate.  *Id.* at 36.

**DISCUSSION**

Plaintiff moves for summary judgment, seeking a determination that the ALJ's unfavorable decision is erroneous.  Plaintiff argues that the ALJ erred by (1) finding that alcohol use was a material factor to Plaintiff's disability[4]; (2) giving great weight to the opinion of non-examining medical expert, Kenneth Layton, Psy.D; (3) failing to fully and fairly develop the record; and (4) failing to include all of plaintiff's limitations in the hypothetical presented to the vocational expert. Dkt. No. 12-1 (Plaintiff's Memorandum ISO Summary Judgment).  She requests reversal of the ALJ's decision and remand to the Commissioner for further proceedings.[5]  *Id.*  Defendant also moves for summary judgment, contending that substantial evidence supports the ALJ's findings and conclusions and that the ALJ's decision is free from reversible error.  Dkt. No. 15 (Defendant's Cross-Motion for Summary Judgment).

**I.      Materiality of Plaintiff's Alcohol Abuse**

After finding that plaintiff's impairments were severe enough to be disabling when considering her alcohol abuse, the ALJ determined plaintiff's substance use was a material, contributing factor to this determination.  AR at 27.  Because the ALJ found that plaintiff's alcohol use was material, the ALJ concluded that plaintiff was not disabled on September 30, 2009, the Date Last Insured, and denied benefits.  *Id.* at 36-37.  Plaintiff contends that the ALJ improperly analyzed the materiality of plaintiff's alcohol use, that he failed to support his materiality determination with

---

[4] Plaintiff also appears to argue that the ALJ failed to follow Social Security Ruling 13-2p, which explains the Social Security Administration's ("SSA") policies for considering drug addiction and alcoholism ("DAA").  Because this argument is related to whether Plaintiff's DAA was a material factor to her disability, the Court will address these arguments together.

[5] Plaintiff does not request, and therefore the Court will not address, remand for an immediate award of benefits.  The Court will not address findings that the plaintiff "failed to argue . . . with any specificity in [her] briefing."  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

substantial evidence, and that plaintiff's alcohol use was not a material, contributing factor to her

disability. Dkt. No. 12-1 at 5, 12-14 (Plaintiff's Memorandum ISO Summary Judgment.[6]

Plaintiff bears the burden of demonstrating that her alcohol use was not a material

contributing factor to a finding of disability. *See* 20 C.F.R. § 404.1535; *Parra*, 481 F.3d at 748.

The relevant inquiry is whether plaintiff's disabling impairments would remain if plaintiff stopped

her alcohol use. *See* 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). Recognizing the difficulty in

evaluating disability cases with co-occurring DAA and mental disorders, the Ninth Circuit has

distinguished "between substance abuse contributing to the disability and *the disability remaining*

*after the claimant stopped using drugs or alcohol*" and has found that "[j]ust because substance

abuse contributes to a disability does not mean that when the substance abuse ends, the disability

will too." *Sousa*, 143 F.3d at 1245 (emphasis in original). An ALJ's finding that the substance use

is material must be supported with evidence in the record that is fully developed and that establishes

that the claimant's co-occurring mental disorder would improve to the point of nondisability in the

absence of DAA. Social Security Ruling, SSR 13-2p.; Titles II and XVI: Evaluating Cases

Involving Drug Addiction and Alcoholism (DAA), 78 FR 11939-01. To this end, "a record of

multiple hospitalizations, emergency department visits, or other treatment for the co-occurring

mental disorder—with or without treatment for DAA—is an indication that DAA may not be

material even if the claimant is discharged in improved condition after each intervention." *Id.*

Here, to conclude that plaintiff's alcohol use was material, the ALJ relied on medical records,

including plaintiff's numerous hospitalizations, that indicated that plaintiff's alcohol use coincided

and contributed to plaintiff's symptoms, but did not analyze whether plaintiff's disability would

remain if plaintiff stopped the alcohol use. The ALJ described plaintiff's hospitalizations and

mentioned treatment records that indicated when plaintiff "drinks in excess, . . . she produces

superficial cuts on her arms, calls 911 for help, and is then psychiatrically hospitalized until she

sobers and stabilizes." AR at 27. The ALJ then concluded, without referencing evidence, that

plaintiff's "numerous hospitalizations [were] caused by her alcohol abuse," rather than her many

---

[6] For ease of reference, page citations to docket entries will refer to the ECF assigned page number in the upper right hand corner of each page.

mental impairments, including depression and anxiety.  AR at 28.  This was error.  An ALJ must identify at least some medical evidence supporting the conclusion that plaintiff would no longer be disabled if she stopped drinking.  *Nevis v. Apfel*, No. C9804953SI, 2000 WL 342665, at *10 (N.D. Cal. Mar. 24, 2000) (reversing and remanding because the "ALJ did not have the necessary medical evidence to find that plaintiff would not be disabled if she stopped using drugs").

Next, in supporting his materiality conclusion, the ALJ relied upon a non-examining medical opinion.  At the September 8, 2017 hearing, Dr. Layton testified that even with plaintiff's cutting behavior, plaintiff's alcohol use would not raise the paragraph B criteria higher.  AR at 370.  The ALJ concluded that "Dr. Layton opined that when the claimant was off drugs, not intoxicated, and not going through withdrawals, her mental impairments did not meet or equal any listing and she had only mild to moderate 'paragraph B' limitations."  *Id.* at 28.  Finally, the ALJ, in finding plaintiff's alcohol abuse material to her impairments being of listing level severity, assigned significant weight to the May 29, 2014 treatment notes of Dr. Jonathan Manaoat.  AR at 29.  In these notes, Dr. Manaoat states that when plaintiff abuses alcohol, "she becomes more suicidal and has issues with maintaining her safety."  *Id.* at 1063.  However, the ALJ did not cite medical evidence and did not analyze whether plaintiff's mental impairments would remain if plaintiff discontinued her alcohol abuse.  The ALJ erred in confusing the issue of whether plaintiff's alcohol abuse contributed to the disability with the question of whether the disability would remain absent the alcohol abuse.  *See Sousa*, 143 F.3d at 1245 (holding that reversal and remand is appropriate where the ALJ erred in failing "to distinguish between substance abuse contributing to the disability and the disability remaining after the claimant stopped using drugs or alcohol. The two are not mutually exclusive.").  The relevant inquiry in evaluating disability cases with co-occurring DAA and mental disorders is not whether plaintiff's alcohol use contributed to the disability, but rather, whether plaintiff's disability would remain after she stopped her alcohol use.  *See id.* at 1245.

Indeed, the ALJ failed to reconcile the opinion of Dr. Layton and the notes of Dr. Manaoat with evidence in the record that plaintiff continued to suffer disabling mental impairments even when not under the influence.  For instance, on August 24, 2014 plaintiff, while sober, was admitted to the UNI Comprehensive Assessment and Treatment Program for diagnostic clarification,

stabilization, and a look at her medications. AR at 610. In her initial assessment, treating physician Dr. Laura Gilley-Hensley notes that plaintiff "has struggled with near constant suicidal ideation, self-harm thoughts, worsening depression, anxiety and not being able to live on her own." *Id.* Presumably, plaintiff maintained sobriety at least until her discharge from the program on September 12, 2014. On the day of her discharge, plaintiff reported having self-harm thoughts and feeling anxious. *Id.* at 627. Clinically, during the program, plaintiff was diagnosed with depression, anxiety, and an autism spectrum disorder. *Id.* The ALJ overlooks this evidence in analyzing the materiality of plaintiff's alcohol use.[7] In light of this evidence, as well as evidence submitted to the Appeals Council, indicating that plaintiff's mental impairments may be severe enough to be disabling even while sober, the ALJ's finding that plaintiff's alcohol use was material is not supported with substantial evidence.

For these reasons, the Court concludes that the ALJ failed to support with substantial evidence the determination that plaintiff's alcohol abuse was a material, contributing factor to her disability. In this way, the ALJ committed reversible error.

Upon remand, the ALJ should determine whether plaintiff's alcohol use was material to a finding of disability on or before September 30, 2009. The ALJ should evaluate the opinions of plaintiff's treating doctors, psychologists, and therapists, including Linda Frankel, M.D., Caroline M. Date, Psy.D., Michelle Baker, MFT, and James A. Cowgill, LMFT, as well as any psychological or educational assessments or evaluations. The ALJ should also evaluate the plaintiff's treatment records, including the medical records during plaintiff's inpatient stay at the UNI Comprehensive Assessment and Treatment Program from August to September 2014, plaintiff's medical records from New Directions dated January 2, 2015 to May 6, 2016, and treatment records submitted to the Appeals Counsel from plaintiff's visits to Lifelong Medical Clinic and Alta Bates Summit Medical Center Psychiatric Unit, to determine whether plaintiff's mental impairments would have remained in the absence of her alcohol use.

---

[7] The ALJ does note that the "record reflects that the claimant has a longstanding history of mental health impairments, even when she is not actively using substances." AR at 31. The ALJ refers to plaintiff's hospitalization during the UNI program and her diagnosis for "various mental impairments, not only alcohol abuse," but does not account for them in the materiality analysis. *Id.*

## II.     Impairments Remaining Absent Alcohol Abuse

After finding that plaintiff's alcohol abuse was material to her impairments being of listing level severity, the ALJ determined the remaining limitations would cause more than a minimal impact on her ability to perform basic work activities and thus she would continue to have a severe impairment or combination of impairments. AR at 30. However, the ALJ never indicated which of these remaining impairments would still exist if plaintiff did not abuse alcohol. Indeed, the Commission's regulations require the ALJ to distinguish between the alcohol abuse contributing to the disability and the impairments remaining when the alcohol use is stopped. *See* 20 C.F.R. §§ 424.1535(b)(2); 416.935(d)(2); *Sousa*, 143 F.3d at 1245; *Frederick v. Barnhart*, 317 F. Supp. 2d 286, 293 (W.D.N.Y. 2004) (reversing decision where the ALJ failed to identify which of plaintiff's impairments would still exist if she stopped using alcohol);.

Instead, the ALJ noted that plaintiff "has a longstanding history of mental health impairments, even when she is not actively using substances" and, while under close medical supervision, plaintiff was "diagnosed with various mental impairments not only alcohol abuse." AR at 31. The ALJ then concludes that plaintiff's "remaining limitations would not meet or medically equal the criteria of listings 12.04, 12,06, 12.08, or 12.10[8]." *Id.* The ALJ then demotes plaintiff's "paragraph B" to only moderate limitations in two of the four areas of mental functioning— interacting with others and adapting or managing oneself—that he previously concluded plaintiff had marked limitations. *Id.* at 31-32. In support, the decision cites to December 22, 2013 treatment notes that indicate the plaintiff's "mood improved once she was sober from alcohol." *Id.* at 32. This is insufficient and warrants reversal. *See Frederick*, 317 F. Supp. 2d at 293 (stating that a finding that there would be improvement in symptoms is not dispositive of whether a claimant's alcoholism is material to her disability).

## III.     Medical Expert Kenneth Layton, Psy.D

Plaintiff contends the ALJ erred by granting "great weight" to the opinion of non-examining

---

[8] Of note, the ALJ includes listing 12.10 (autism spectrum disorder) in his step three analysis excluding plaintiff's alcohol abuse, but not in the analysis when considering plaintiff's alcohol abuse.

medical expert Kenneth Layton, Psy.D. Dkt. No. 12-1 at 5. Plaintiff appears to argue that, in so doing, the ALJ committed legal error by failing to satisfy the requirements of 20 CFR 404.1527(c)(3). *Id.*

In this circuit, courts distinguish among the opinions of three types of physicians: (1) treating physicians who have an established relationship with the claimant; (2) examining physicians who see the claimant but do not treat her; and (3) non-examining physicians who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician should be given greater weight than that of an examining or non-examining physician. *Id.* Similarly, an examining physician's opinion usually should be given more weight than that of a physician who has not examined the claimant. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

For claims filed before March 27, 2017, such as plaintiff's, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). As such, the ALJ must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. *Lester*, 81 F.3d at 830. Even where an examining physician's opinion is contradicted by another physician's opinion, an ALJ may not reject the opinion without "specific and legitimate reasons that are supported by substantial evidence" in the record. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). Social Security regulations provide that, when a treating source's opinions are not given controlling weight, an ALJ must apply the factors in 20 C.F.R. § 404.1527(c)(2)(i-ii) (length of treatment relationship and the frequency of examination; nature and extent of the treatment relationship) and (c)(3-6) ("supportability," consistency, specialization, and other factors that tend to support or contradict the

opinion) in determining how much weight to give each opinion. *Id.* at 1012, n.11.

The "substantial evidence" standard requires an ALJ to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretation thereof, and mak[e] findings." *Reddick*, 157 F.3d at 725. Conclusory statements by the ALJ are insufficient; she "must set forth her own interpretations and explain why they, rather than the doctors', are correct." *Id.* An ALJ errs if she "does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another[.]" *Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

The ALJ assigned great weight to Dr. Layton's opinion in finding that claimant's mental impairments, including her alcohol abuse, were of listing level severity. AR at 28, 35. The ALJ noted that Dr. Layton's opinion was based on a complete review of plaintiff's medical records and program expertise and that Dr. Layton "provided specific citations from the evidence to support his findings and answered all of the claimant's questions at the supplemental hearing." *Id.* Yet Dr. Layton's findings were not based on a thorough review of the record because they do not consider plaintiff's testimony at the initial hearing and the later-submitted evidence, including the assessment from treating psychiatrist Linda Frankel, M.D. Indeed, Dr. Layton's findings are at times inconsistent with the record. For example, Dr. Layton's opinion that plaintiff, when not abusing alcohol, has only mild limitations in concentration, persistence, and pace conflicts with Dr. Frankel's assessment of marked to extreme limitations. *Compare* AR at 370 with AR at 89. Dr. Layton concluded that plaintiff only has moderate limitations in interacting with others because plaintiff is able to ride Bay Area Rapid Transit (BART) and has not been "kicked off." AR at 370. Yet plaintiff testified at the hearing that she at times, does not have "energy left to actually accomplish anything" and, on at least one occasion, "ended up sitting in the corner of a BART station" for hours on end until the crowds dissipated and the "BART train wasn't too crowded anymore." AR at 349. Plaintiff's mother testified that Ms. Witkin "has been known to have to get off of a crowded BART" and "can't be around a lot of noise, a lot of stimulation." AR at 351. In addition, her treating therapist Michelle Baker noted limitations that include sensory overload in many public settings and unfamiliar environments and an inability to effectively navigate ordinary and daily tasks due to

anxiety issues. AR at 65. As such, Dr. Layton's opinion is not consistent with the record and credible evidence exists to rebut his findings. Thus, the ALJ erred in giving great weight to non-examining medical expert Kenneth Layton, Psy.D.

On remand, the ALJ should reevaluate the findings in light of the Court's guidance regarding Dr. Layton's opinion. In so doing, the ALJ shall consider the additional evidence that plaintiff submitted to the Appeals Council and that the Appeals Council made part of the administrative record in this case.

The errors the ALJ made (1) by failing to support with substantial evidence the determination that plaintiff's alcohol abuse was a material, contributing factor to her disability, (2) by failing to identify which impairments existed independent of plaintiff's alcohol abuse, and (3) in weighing the medical opinions constitute legal errors that alone warrant reversal. Accordingly, the Court need not and does not reach the remaining arguments plaintiff raises.

## CONCLUSION

The Court GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment. The Court REVERSES the decision of the Commissioner and REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

**IT IS SO ORDERED**.

Dated: March 3, 2020

_____
SUSAN ILLSTON
United States District Judge